**TERRA RESOURCES I, A New York Limited Partnership, Plaintiff,**

v.

**James D. BURGIN; B–J, Incorporated; Jim's Pipe & Supply, Inc.; Blenda S. Burgin; James Michael Cassidy; Edward Poston; Poston & Poston Drilling Company; J. Donald Silberman; and Monitor Resources, Inc., Defendants.**

No. 85 Civ. 2810 (RWS).

United States District Court, S.D. New York.

May 29, 1987.

Rosner & Goodman, New York City (Andrew J. Goodman, of counsel), for plaintiff.

Davis Hoxie Faithfull & Hapgood, New York City (Charles J. Raubicheck, of counsel), for defendants Blenda S. Burgin and Jim's Pipe & Supply, Inc.

Fried, Greenbaum, Spector, Scher, Schwartz & Feldman, New York City (Harvey J. Fried, Randi S. Jones, of counsel), for defendants B–J, Inc., James D. Burgin, Monitor Resources, Inc., and J. Donald Silberman.

## OPINION

SWEET, District Judge.

Defendants James D. Burgin (J. Burgin); B–J, Inc. (B–J); J. Donald Silberman ("Silberman"); and Monitor Resources ("Monitor") have moved against plaintiff Terra Resources I ("Terra") pursuant to Fed.R. Civ.P. 12(b)(6) for an order dismissing the second third and fourth claims against all defendants, pursuant to Fed.R.Civ.P. 12(b)(6) for an order dismissing the complaint in its entirety against Monitor Resources and J. Donald Silberman, and for a stay pending arbitration of plaintiff's contract-related state law claims against B–J Inc. and pending dispostion by the United States Supreme Court from the decision of the Court of Appeals for the Second Circuit in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted*, —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986). Blenda Burgin ("B. Burgin") and Jim's Pipe and Supply, Inc. ("Jim's Pipe") have moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the RICO and the securities claims as against them, which they submit would eliminate the court's jurisdiction with respect to the rest of the complaint.

Originally this motion was argued on December 5, 1986, but, the day before, the Second Circuit had issued *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986). On the strength of *Ianniello*, Terra supplemented its papers on February 13, 1987. Defendants did not object to this submission, their response to it was received by the court on March 9, 1987, and the motion was marked fully submitted on that date.

**The Complaint**

For the purpose of these 12(b)(6) motions, the facts as alleged in the complaint must be taken as true. In short, the allegations pertinent to these motions are as follows: Terra, a limited New York partnership, was defrauded by the defendants in connection with the exploration and drilling for oil and natural gas within the State of Tennessee.

James and Blenda Burgin were majority stockholders of B–J, a Tennessee corporation in the business of exploring and drilling for oil and natural gas and also majority stockholders of Jim's Pipe, another Tennessee corporation in the business of selling business supplies. Terra alleges that these corporations were mere alter egos of the Burgins.

Monitor is a New York corporation engaged in the practice of geological consulting. Silberman is alleged to be the domi-

nant officer and director of Monitor, whose affairs he conducts as his alter ego.

In essence, the Burgins defrauded Terra by making fraudulent misrepresentations to induce Terra to invest in oil and gas drilling prospects, and funneled the ill-gotten profits into B–J and Jim's Pipe. Monitor, through Silberman, is alleged to have conspired with the other defendants in this scheme by confirming geologic information that J. Burgin provided to Terra although Monitor and Silberman knew or should have known that the information was false. They are alleged to have received money from J. Burgin for providing these false confirmations.

## I. The RICO Claims

### A. Pattern

[1] The civil provisions of the Racketeer Influenced and Corrupt Organizations Act, Pub.L. No. 91–452 Tit. IX, 84 Stat. 941 (codified as amended at 18 U.S.C. §§ 1961–68) ("RICO") have caused jurisprudential difficulty. Although crafted as a tool to encourage private prosecution of organized crime, RICO is frequently invoked in civil fraud suits, given the possibility of obtaining an award of treble damages and attorneys' fees if successful.

Predicate acts—two of which must be proved to establish a RICO violation—include violations of the Mail Fraud Act, a provision that is so broad that former Chief Justice Burger once referred to it as a "stopgap" criminal statute, a statute so broad that it could be invoked by prosecutors to stop swindlers even before Congress appreciated the new type of crime and got around to outlawing it. *See United States v. Maze*, 414 U.S. 395, 405–06, 94 S.Ct. 645, 651, 38 L.Ed.2d 603 (1974) (Burger, C.J., dissenting); *see also United States v. Margiotta*, 688 F.2d 108, 139–44 (2d Cir. 1982) (Winter J., dissenting) (generally discussing "limitless expansion of the mail fraud statute"), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

In the criminal sphere, RICO prosecutions are controlled through measured prosecutorial discretion. In the private sector these constraints are missing and the courts have seen a flood of cases under the RICO label which have nothing at all to do with organized crime as it is understood commonly or was understood by Congress at the time of the enactment of the statute. As the Supreme Court has said, "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." *Sedima, S.P. L.R. v. Imrex Co., Inc.*, 473 U.S. 479, 500, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). Although trying to cripple organized crime, Congress may have instead contributed to the slow disintegration of the quality of the federal courts through yet another example of what Chief Judge Wilfred Feinberg has called "[t]houghtless increases in federal jurisdiction." Feinberg, *The Coming Deterioration of the Federal Judiciary*, 42 The Rec. 179, 182 (1987).

The unexpected effect of the civil RICO provisions has been brought to Congress's attention, hearings have been held, and various solutions proposed. However, legislation moves slowly through the halls of the Capitol, and no remedy has yet been forthcoming. Still, there is no evidence that it was ever the intent of Congress to flood the federal courts with actions more properly brought under various state and other federal statutes in the name of RICO simply because of the carrot of treble recovery. Although the ultimate correction of the civil RICO problem "must lie with Congress," *Sedima*, 473 U.S. at 499, 105 S.Ct. at 3287, the Supreme Court laid part of the blame for the civil RICO explosion on the failure of the judiciary "to develop a meaningful concept of 'pattern,'" *id.* at 500, 105 S.Ct.at 3287.

RICO requires that the commission of racketeering offenses must comprise a "pattern." 18 U.S.C. § 1962(a)–(d). The statute defines pattern as requiring at least two of the enumerated predicate acts within a ten-year period. 18 U.S.C. § 1961(5). In *Sedima*, the Supreme Court indicated that two acts are necessary, but perhaps not sufficient, to create a "pattern." Noting that "in common parlance two of anything do not generally form a 'pattern,'" the Court suggested that "continuity plus

relationship ... combines to produce a pattern." *Id.* In other words, the requirement of the *pattern* is not satisfied unless there is "a relationship and continuity between predicate acts." *Beck v. Manufacturers Hanover Trust,* 645 F.Supp. 675, 683 (S.D.N.Y.1986); *see also Procter & Gamble Co. v. Big Apple Indus. Bld'gs, Inc.,* 655 F.Supp. 1179 (S.D.N.Y.).

The law on continuity in this Circuit has included a rule that "a defendant who commits various criminal acts in the course of one fraudulent scheme has not committed a 'pattern of racketeering'." *Beck v. Manufacturers Hanover Trust Co.,* 645 F.Supp. 675, 683 (S.D.N.Y.1986). For instance, in *Bear Creek Productions v. Saleh,* 643 F.Supp. 489 (S.D.N.Y.1986), the Honorable Edward Weinfeld dismissed the "seemingly inevitable civil RICO claim," *id.* at 490, on pattern grounds. *Bear Creek* involved allegations of fraudulent representations relating to the production and distribution of a single motion picture, and in dismissing the RICO counts, Judge Weinfeld observed: "numerous cases in this circuit, examining the question of length, have held that where the criminal acts alleged form a single scheme, they do not constitute a 'pattern of racketeering activity.'" *Id.* at 495 (footnote omitted). *See also Richter v. Sudman,* 634 F.Supp. 234 (S.D.N.Y.1986); *Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461 (S.D.N.Y.1986). *But see Bankers Trust Co. v. Feldesman,* 648 F.Supp. 17, 25–26 (S.D.N.Y.1986); *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1170–71 (S.D.N.Y.1985).

In this case, the RICO pattern is alleged to be constituted by a series of mail and wire frauds all directed at consummating a single fraud. That is, it took a number of telephone calls and letters to separate Terra from its money successfully. This is an insufficient allegation to meet the pattern requirement.

Plaintiff here contends that the recent Second Circuit case *United States v. Ian-niello,* 808 F.2d 184 (2d Cir.1986), stands for the proposition that it need show no element of continuity except insofar as the enterprise element of RICO is also met. As the Honorable Pierre Leval has recently noted in construing *Ianniello,* "Although there is language in *Ianniello* which on a superficial reading can give apparent support to plaintiff's argument, this notion disappears when the language is read carefully in the context of the facts and the holding." *Procter & Gamble Co. v. Big Apple Indus. Bld'gs, Inc.,* 655 F.Supp. 1179, 1183–84 (S.D.N.Y.1987).

As Judge Leval's careful parsing of the case shows, the essence of *Ianniello* was the court's holdings that the enterprise in question was wholly criminal, and that the goal of the enterprise was a "fraud continuing indefinitely." 808 F.2d at 191. Thus, as *Big Apple* notes, "The [*Ianniello*] court's statements about the relationship of the predicate acts to that enterprise *presuppose its continuing criminal nature.*" *Big Apple,* 655 F.Supp. at 1188 (emphasis added). In other words, the necessary continuity between predicate acts can be, and in *Ianniello* was, supplied by the relationship of the acts to a criminal enterprise that will continue indefinitely. But that is not to say that *every* kind of enterprise *necessarily* supplies the requisite element of continuity. Quite the contrary, in *Big Apple,* the court found that the relation of predicate acts to the lawful construction enterprise in that case failed to provide the requisite continuity, *id.,* which fits neatly with pre-*Ianniello* cases in which courts have found no pattern when "defendants' alleged conduct is not on-going or open-ended." *Beck,* 645 F.Supp. at 684 (citing cases).

When there is no "continuing criminal enterprise" 808 F.2d at 192, of the breadth and indefinite duration of the one in *Ianniello,* courts must appeal to other indicia to determine whether the continuity element of pattern has been satisfied.[1] In

---

1. Because *Ianniello's* holding with respect to pattern turned on its finding of the existence of "an enterprise with 'a single purpose,'" 808 F.2d at 191, to wit "a continuing criminal enterprise," *id.* at 192, of indefinite duration, the court's observations with respect to patterns, multiple episodes, and multiple schemes, 808 F.2d at 192

this case, there has been no such allegation that the enterprise exists solely to perpetrate fraud indefinitely, and neither has there been an allegation of any other element that might satisfy the continuity element. Consequently, the RICO allegations will be dismissed for failure to state a claim upon which relief can be granted.

## B. Civil RICO Statute of Limitations

■ Defendants also submit that the RICO claim is time barred because the statute of limitations is three years. Plaintiffs have not disputed that the action would be time-barred if the correct statute of limitations is three years, and instead have argued that it should be six. Under the law of this Circuit, the correct statute of limitations is three years, and consequently the RICO actions are time barred.

Like many other federal statutes, civil RICO has no explicit statute of limitations. This means that courts must apply the most appropriate limitations period from state law. *Durante Bros.*, 755 F.2d at 248. There are two leading cases in this Circuit on civil RICO statutes of limitations, *Durante Bros. & Sons, Inc. v. Flushing National Bank*, 755 F.2d 239 (2d Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985), and *Bankers Trust Co. v. Feldesman*, 648 F.Supp. 17 (S.D.N.Y. 1987) (Conner, J.). Both applied a three years statute of limitations.

The RICO claims in *Durante Bros.* turned on showing that the defendants had collected "unlawful debt." *Durante Bros.*, 571 F.Supp. at 491. "Unlawful debt" is defined in 18 U.S.C. § 1961(6) as being "a debt ... which is unenforceable under State or Federal law in whole or in part ... because of the laws relating to usury, and ... which was incurred in connection with ... the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is a least twice the enforceable rate." With respect to the RICO claims grounded on the usury predicates, the parties in the district court differed over the appropriate statute of limitations, whether one year

under the terms of CPLR § 215(6) actions to recover any overcharge of interest, the six-year statute of limitations provided in CPLR § 213(8), for actions "based on fraud," or the three-year period set out in CPLR § 214(2), for actions "To recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215."

The district court ruled out § 214(2) on the grounds that it explicitly excluded actions listed in §§ 213 and 215, those based on usury or fraud. *Durante Bros.*, 571 F.Supp. at 493. As between fraud and usury, the district court held: "To the extent that plaintiff was injured by the payment of usurious interest and seeks to recover that interest, and a penalty for the overcharge, the claim falls squarely within the language of C.P.L.R. § 215(6)." *Id.* at 492. Consequently, the district court applied the one year statute of limitations for the causes of action grounded on usury.

In reversing the district court, the Second Circuit detailed the elements that a plaintiff would have to prove to prevail on a RICO claim involving usury. *Durante Bros.*, 755 F.2d at 248. These included a large number of elements unique to RICO cases, elements *never* present in any state action analogous to the predicate crime. The court observed that to prove a RICO claim based on usury, the plaintiff would have to prove:

(1) there was a RICO enterprise, (2) its activities affected interstate commerce, (3) the individual defendants were employed by or associated with the enterprise, (4) the [defendant] used, in the operation of the enterprise, income derived from the collection of unlawful debt, and (5) the individual defendants participated in the conduct of the affairs of the enterprise through collection of unlawful debt ... (6) the debt was unenforceable in whole or in part because of state or federal laws relating to usury, (7) the debt was incurred in connection with 'the business of lending money ... at a [usurious] rate,' and (8) the usurious

n. 15, n. 16, in cases lacking such an enterprise are *dicta*.

rate was at least twice the enforceable rate.... (9) as a result of the above confluence of factors, (10) it was injured in its business or property.

*Id.* at 248. Plainly, most of these elements are RICO inventions. As the Second Circuit put it, "a state law [usury] claim ... could be established without proof of nine of the ten listed elements...." *Id.* at 249. Because of this, the panel held: "There being no state law analog to the present civil RICO claim, we conclude that the most appropriate state statute of limitations is that found in CPLR § 214(2), governing actions to enforce a liability created by statute." *Id.* In short, the *Durante* court held that RICO's unprecedented elements—elements which attend every civil RICO prosecution—distinguish it so thoroughly from the predicate acts which underpin it that the appropriate state statute of limitations must be that for statutorily created liabilities, three years. This reasoning would seem to direct that CPLR § 214(2) governs all civil RICO claims.

However, there has been significant discussion in the Southern District as to whether *Durante Bros.* completely settled the issue. *See Bankers Trust Co. v. Feldesman,* 648 F.Supp. 17, 28–30 (S.D.N.Y.1987) (discussing cases). In a recent and characteristically thorough opinion, the Honorable William C. Conner, concluded that although *Durante* "did not seem to be announcing a rule for all civil RICO cases," *Feldesman,* 648 F.Supp. at 30, the three-year limitation set out in CPLR § 214(2) should nonetheless apply to all RICO claims. After discussing the Supreme Court's opinion in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 35 L.Ed.2d 254 (1985), and the Third Circuit's opinion in *Malley-Duff & Assocs. v. Crown Life Ins. Co.,* 792 F.2d 341 (3d Cir.1986), Judge Conner concluded that a single statute of limitations should apply to all RICO claims, no matter what the predicate acts underlying the claim are. Having done so, the court rejected the statute of limitations for fraud, because the common law fraud analogy fails to capture the full spectrum of causes encompassed by RICO. *Feldesman,* 648 F.Supp. at 34. He rejected the "omnibus" statute of limitations, CPLR § 213(1), because that statute has generally been understood to govern actions for equitable relief only. *Id.* Consequently, the court adopted CPLR § 214(2), analogizing its use to other contexts in which federal courts had borrowed it and its predecessor in other federal causes lacking a statute of limitations. *Id.* at 34–35.

In short, even if *Durante* did not settle the issue, this court follows Judge Conner's holding on the statute of limitations in *Feldesman,* and, accordingly, this RICO action is time-barred.[2]

## FOURTH CAUSE OF ACTION

■ Plaintiff's fourth cause of action alleges violations of the Martin Act, Section 352–c of the General Business Law of the State of New York. Since Terra filed its Third Amended Complaint the First Department of the New York State Appellate Division decided "an issue that apparently has not been decided by an appellate court in the State, to wit: is there a private right of action under Martin Act § 352–c." *CPC Int'l, Inc. v. McKesson Corp.,* 120 A.D.2d 221, 223, 307 N.Y.S.2d 984 (1st Dept.1986). After examining the section's legislative history and noting that various federal courts had previously decided to the contrary,[3] the court decided that there was not. *Id.* at 236, 507 N.Y.S.2d 984.

In elaborating the *Erie* doctrine[4] the Supreme Court has laid out special rules for the authoritative weight to be afforded intermediate state court decisions: "Where an intermediate appellate state court rests its considered judgment upon the rule of

---

2. Because the issue has been resolved on the grounds of pattern and the statute of limitations, the court has not reached the issue of enterprise.

3. *See, e.g., Whitbread (US) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.,* 630 F.Supp. 972, 985 (S.D.N.Y.1986); *Superintendent of Insur-*

*ance v. Freedman,* 443 F.Supp. 628, 637 (S.D.N.Y.1977); *American Bank & Trust Co. v. Barad Shaff Securities Corp.,* 335 F.Supp. 1276, 1282–83 (S.D.N.Y.1972); *Lupardo v. I.N.M. Industries Corporation,* 36 F.R.D. 438, 439 (S.D.N.Y.1965).

4. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *see also Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).[5] Affording the appellate court's decision this weight, the Martin Act claims will be dismissed.

## BLENDA BURGIN

■ Blenda Burgin argues that the complaint should be dismissed as against her because it fails to allege wrongdoing. According to plaintiffs, their complaint makes out an action against her under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t, which provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

In essence, Blenda Burgin has advanced a pleading argument. She contends that Terra must allege not only that she was a controlling person, but also that it must anticipate and negate a good faith defense by pleading that she participated in the primary violation. In support of this proposition she cites a California district court case, *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 646–47 (C.D.Cal.1983).

In this Circuit "good faith" is recognized as a *defense* under this provision. *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). The pleading scheme set up in the Federal Rules of Civil Procedure directs that after a plaintiff sets forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), the defendant shall then raise "[e]very defense, in law or fact," in the responsive pleadings, Fed.R.Civ.P. 12(b). Terra is not required to anticipate and negate Blenda's defense.

In addition, the exacting pleading requirements urged by the defendant run contrary to the broad reading the Second Circuit has given the "controlling person" provision. For instance in *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 812 (2d Cir.1975), the Second Circuit held that because the "controlling person" provisions were meant to expand the scope of liability under the securities laws, they would not be read to eviscerate common law liability stemming from agency principles. *See also Marbury Management, Inc. v. Kohn*, 629 F.2d 705 (2d Cir.1980) (reading § 20(a) expansively). In light of this Circuit's practice of reading the "controlling person" provisions expansively, it would seem imprudent to construct a pleading requirement that demands that plaintiffs anticipate and negate an alleged controlling defendant's good faith defense by pleading detailed facts to show the controller's culpability, and instead, the ordinary rules for pleading will apply. Plaintiffs need plead only that a defendant controlled a primary violator of the securities laws. Any defense, such as the good faith defense here, must be raised in the responsive pleadings.

In this case, paragraphs 5 and 8 of the Third Amended Complaint allege that Blenda and James Burgin together were the majority shareholders, dominant directors and officers of B–J, Inc. Because defendants have not challenged the securities

---

**5.** In this respect, federal courts owe a greater deference to intermediate state court decisions than the New York Court of Appeals does; the Court of Appeals does not need to make any finding about what another body will do, but rather it simply construes the law as it sees it. Thus parties seeking a rule contrary to that announced in an intermediate court decision are at a significant substantive disadvantage when they are in federal court in diversity. Such a difference in the substantive outcome would appear to work contrary to the theory driving the *Erie* doctrine, notwithstanding the *West* case.

claim against B–J, the allegation that Blenda Burgin controlled B–J is enough to bring her within the scope of § 20(a).

Blenda Burgin will, of course, have a chance to controvert the allegation that she controlled the company, and will also have the opportunity to raise any good faith defense fully.

**Monitor and Silberman**

Monitor and Silberman have moved to have the complaint dismissed with respect to them for failure to state a claim. For the reasons discussed above, counts 2 and 3, the RICO counts, will be dismissed, as will count 4.

As to the securities claims in count 1, Terra argues that its complaint successfully pleads that Monitor and Silberman aided and abetted in the securities fraud. Paragraph 35 of the complaint alleges:

> Upon information and belief, Monitor, acting by and through Silberman, acting alone and in concert with other Defendants, knowingly and wilfully committed, *inter alia,* the following overt acts in furtherance of the conspiracy:
>
> A. Introduced J. Burgin to Plaintiff.
> B. Provided a very positive recommendation for J. Burgin.
> C. Under the guise of providing independent geological consulting services for Plaintiff, provided by J. Burgin, and confirmed J. Burgin's advice that the prospects listed were likely to result in wells producing commercially reasonable quantities of oil and natural gas, when in fact Monitor and Silberman knew, or should have known, that the geological data provided by J. Burgin did not warrant such a conclusion; and
> D. Received payment from J. Burgin, either in cash or other consideration, upon information and belief, from funds wrongfully and fraudulently obtained from Plaintiff and other investors, for providing such advice to Plaintiff and other investors.

In order to make out a case of aiding and abetting properly, Terra must allege: "(1) existence of a primary fraud; (2) knowledge by the aider and abettor of that fraud; and (3) substantial assistance of the fraud." *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1043 n. 11 (S.D.N.Y.1986) (Carter, J.). Terra has alleged a primary fraud by J. Burgin and B–J, which defendants have not attacked as insufficiently pled, so the first of the elements has been satisfied. Paragraph 35, in alleging that Monitor and Silberman were paid to confirm information that they should have known was inaccurate, would appear to satisfy the third element, substantial assistance for the fraud. *See Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 48 (2d Cir.) (reassuring victim of defrauder's competence part of "substantial assistance"), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). However, the paragraph lacks any allegation that Monitor and Silberman knew of the underlying fraud,[6] and consequently, the complaint has failed to state an aiding and abetting claim.

As for the claim of conspiracy, it has already been noted that an allegation of knowledge of the underlying scheme is absent, but, additionally, there is no allegation that Monitor and Silberman entered into an agreement with the other wrongdoers. *See Troyer v. Karcagi,* 476 F.Supp. 1142, 1153 (S.D.N.Y.1979).

In addition, plaintiff's complaint fails to state a primary case of securities fraud against Monitor and Silberman by failing to allege that they relied on the misrepresentations, *see Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). The failure to plead reliance is fatal also to Terra's common law fraud claim. *See Jones v. Title Guarantee & Trust Co.,* 277 N.Y. 415, 14 N.E.2d 459 (1938). The first claim and the fifth claims are therefore dismissed with respect to Monitor and Silberman with leave to replead.[7]

---

6. It does allege that they "knowingly and wilfully" performed certain acts, but performing certain acts knowingly and wilfully is very different from knowing of the primary fraud.

7. Although defendants have pointed out that this is already the Third Amended Complaint, two of the amendments were made because of

Similarly, the complaint fails to allege a basis for Terra's claim of breach of fiduciary duty against Monitor and Silberman, or an attempt by Monitor or Silberman to induce B–J to violate its alleged agreements with Terra. Consequently, the fifth and seventh claims are dismissed.

## JIM'S PIPE

█ The situation with respect to the aiding and abetting claim against Jim's Pipe is somewhat different in that Jim's Pipe is alleged to have acted "by and through the Burgins." Because James Burgin is alleged to have perpetrated the primary fraud himself, an allegation that Jim's Pipe knew of the primary fraud would, of course, be superfluous. Thus the first two elements set forth in the *McCrory* case are adequately alleged. As for the final element, substantial assistance, the complaint alleges that Jim's Pipe shifted the poor oil-wells to investers while steering the good ones to the Burgins, provided supplies for wells it knew should not have been drilled, charged more than the industry standard for the supplies, and was the final resting place of many of the exhorbitant profits generated by the scheme. This can be said to be "substantial assistance,"[8] and thus aiding and abetting the securities violation is adequately pled.

## THE STAY

█ By opinion of April 1, 1986, this court directed that Terra's claims against B–J should be submitted to arbitration. After this decision, the Second Circuit issued *McMahon v. Shearson/American Express*, 788 F.2d 94, *cert. granted*, —— U.S. ——, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), holding that securities claims were not arbitrable. On the basis of *McMahon*, Terra moved for leave to file its third Amended Complaint realleging the securities claims against B–J.

Defendants have now moved for a stay of this action pending the resolution of those parts of Terra's claim that remain in arbitration, and, alternatively, pending the Supreme Court's decision in *McMahon*.

Until the Supreme Court speaks to the contrary, *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94, 99 (2d Cir. 1986), remains the law of this Circuit. In *McMahon* the Second Circuit decided that common law causes in a complaint were subject to arbitration, but that the RICO and securities claims were not. The district court had previously held that the securities claims *and* the common law claims were arbitrable, but that the RICO claims were not, and had, consequently, placed the RICO claims on the suspense calendar pending resolution of the arbitration. The Circuit affirmed with respect to the common law claims, but indicated that the non-arbitrable federal claims should go forward together. The panel also quoted the following language from *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985):

> [T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, *even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.* (emphasis added).

Although whether or not to grant a stay is largely within a district court's discretion, *Genesco, Inc. v. Kakiuchi & Co., Ltd.* 815 F.2d 840 (2d Cir.1987), when put together, *McMahon* and *Byrd* clearly contemplate that federal actions may go forward notwithstanding arbitration in circumstances such as these, and the stay is, therefore, denied.

## Conclusion

For the reasons set forth above, the RICO claims are dismissed as against all defendants, as is the count based on the

---

changes in the underlying law during the pendency of the suit.

**8.** The Second Circuit has observed: "One commentator has suggested that substantial assistance might include 'repeating … misrepresentations (or aiding in their preparation), by act-

ing as conduits to accumulate or distribute securities, by executing transactions or investing proceeds, or perhaps by financing transactions.'" *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 48 (2d Cir.1978) (*quoting* 2 A. Bromberg, *Securities Law* § 8.5 (1974)).

Martin Act, Section 352–c. The complaint is dismissed in its entirety as against Martin and Silberman, and leave to replead is granted. The motions to dismiss the counts against Blenda Burgin and Jim's Pipe are denied, as is the application for a stay.

IT IS SO ORDERED.