Peter SALIT, et al.

v.

The STANLEY WORKS, et al.

Civ. No. 2:91cv00553 (PCD).

United States District Court, D. Connecticut.

Sept. 18, 1992.

Arthur N. Abbey, Lee Squitieri, Abbey &
Ellis, Robert I. Harwood, Wechsler, Skir-
nick, Harwood, Halebein & Feffer, New
York City, Daniel Sagarin, Elia Alexiades,
Hurwitz & Sagarin, Milford, Conn., for
plaintiffs.

Joseph Guglielmmelli, Robert E. Zimet,
Skadden, Arps, Slate, Meagher & Flom,
New York City, Robert K. Ciulla, Tyler,
Cooper & Alcorn, New Haven, Conn., Rich-
ard F. Orr, Tyler, Cooper & Alcorn, Hart-
ford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiffs allege violations of Sections
14(a) and 20(a) of the Securities Exchange
Act, 15 U.S.C. §§ 78n(a) and 78t(a), Rule
14a–9 promulgated thereunder, and also a
pendent claim for breach of fiduciary duty
under state law. Defendants move to dis-
miss all claims.

### I. *Facts*

The second amended complaint alleges
the following.

Plaintiffs own stock in the Stanley
Works, a corporation that manufactures
and sells hand tools and hardware. In
1989, representatives of Stanley met with
representatives of Newell Co. to discuss
combining the two companies. Newell also
manufactures hardware and has made sev-
eral acquisitions over the last four years.
Meetings at which a combination was dis-
cussed were held on August 11 and 31,
1989. Defendants Davis and Ayers were
present on behalf of Stanley at both meet-
ings; defendant Brown was also present at
the second meeting. The discussions,
which included organizational issues, such
as the succession of CEOs, continued into
1990. Stanley did not disclose these discus-
sions to its stockholders.

Beginning in mid–1990, Stanley began to
implement anti-takeover devices to prevent
acquisition of a controlling stake in Stanley
by anyone not approved by Stanley's di-
rectors, such as:

(a) On August 29, 1990, Stanley an-
nounced that it would repurchase up to
3,000,000 shares of its own stock. This

would allegedly increase the voting power of defendants' stock and that in the friendly hands of the trustees of Stanley's Employee Stock Ownership Plans ("ESOPs").

(b) On December 19, 1990, the directors adopted the Stanley Works 1990 Stock Option Plan (the "1990 Plan"), covering up to 2,675,000 shares of Stanley stock to be granted to key Stanley employees and representing approximately 6.5% of the outstanding shares. Upon a "change in control" of the company, all options become immediately exercisable and the company can be caused to repurchase the options.

(c) Also on December 19, 1990, the directors' Compensation and Organization Committee granted options under the 1990 Plan to Stanley's officers and key employees covering 2,114,000 shares. Plaintiffs allege that those options would raise the equity stake of Stanley's management to approximately 34%, giving them the ability to frustrate any takeover proposal, which would require a favorable vote by ⅔rds of the stockholders.

(d) On June 7, 1991, Stanley first announced that, on May 13, 1991, Newell had filed a notification of its intent to purchase between 15% and 25% of Stanley's common stock. The announcement stated that "Stanley Works' management believes Newell Company would be likely to encounter serious obstacles and problems if it were to pursue a course of increasing its holdings."

(e) Also on June 7, 1991, Stanley filed an antitrust suit to prevent Newell's acquisition of Stanley stock and to require Newell to divest itself of Stanley stock.

(f) Stanley then announced the ESOP's purchase of 5,000,000 shares of Stanley stock, increasing the voting control of the ESOPs and the directors, cumulatively, from 15% to approximately 35%. Stanley intended to incur a material debt for this purchase, contrary to its intention to reduce its domestic debt.

(g) Also, Stanley then announced the authorization to repurchase 5,000,000 shares of Stanley stock on the open market. Stanley eventually repurchased only 1,005,968 shares during 1991. Plaintiffs note that the threat from Newell had subsided by mid–1991. Plaintiffs claim these actions evidence a plan by Stanley's directors to ward off a takeover by Newell and entrench their management positions, to the detriment of Stanley shareholders.

Adoption of the 1990 Plan was subject to the approval of the stockholders. On or after March 12, 1991, the company mailed a proxy statement to the Stanley stockholders in which it solicited that approval. According to plaintiffs, the proxy statement was false and misleading in that it did not state that Newell had expressed an interest in Stanley; that discussions on a combination had been held; that the Plan had the purpose and effect of impeding an acquisition and entrenching management's positions; and that the options awarded would raise the stake of Stanley's management and employees such that they could collectively prevent an unwanted takeover.

## II. Procedural Background

Plaintiffs' suit is against Stanley and certain of its directors. Plaintiffs claim that the proxy statement violated Sections 14(a) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a–9 promulgated thereunder, in that the statement was false and misleading as to material facts concerning the 1990 Plan. Plaintiffs further claim that defendants' conduct violated common law fiduciary duties owed to the shareholders.

Plaintiffs' first amended complaint was dismissed for failure to allege fraud with the particularity required by Fed.R.Civ.P. 9(b). Leave to replead was granted and plaintiffs filed their second amended complaint. Defendants move to dismiss that complaint.

## III. Discussion

A motion to dismiss tests whether plaintiffs have stated a claim upon which relief may be granted. Such a motion should be granted only where no set facts consistent with the allegations could be proven which

would entitle plaintiffs to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The issue is not whether plaintiffs will prevail, but whether they should be afforded the opportunity to offer evidence to prove their claims. *Id.*

### A. Materiality

■ To claim a violation of Section 14(a) and Rule 14(a)–9, plaintiffs must allege facts showing that a proxy statement contained "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9(a) (Supp.1991). Defendants argue that none of the alleged omissions concerned a material fact.

"An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indust. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Materiality depends on the facts of each case, *Basic v. Levinson,* 485 U.S. 224, 238–39, 108 S.Ct. 978, 987, 99 L.Ed.2d 194 (1988), and "should not ordinarily be disposed of on a Rule 12(b)(6) motion." *Joyce v. Joyce Beverages, Inc.,* 571 F.2d 703, 707 (2d Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). *See also In re Union Carbide Class Action Securities Litigation,* 648 F.Supp. 1322, 1326 (S.D.N.Y.1986) ("Courts should be particularly hesitant to dismiss a securities complaint on the grounds of immateriality.").

In the context of merger discussions, materiality "will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic v. Levinson,* 485 U.S. at 238, 108 S.Ct. at 987. A merger may be of such magnitude that information about it becomes material "at an earlier stage than would be the case as regards lesser transactions—and this even though the mortali-

ty rate of mergers in such formative stages is doubtless high." *Id., citing SEC v. Geon Indust., Inc.,* 531 F.2d 39, 47–48 (2d Cir.1976).

Defendants argue that plaintiffs have failed to state a claim because the 1990 Plan did not have anti-takeover effects, a conclusory argument. Defendants correctly note that the court may examine the relevant SEC filings rather than accept plaintiffs' characterization of them. *See Cortec Indust., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* ____ U.S. ____, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). It does not follow, however, that complex factual issues should be resolved on a motion to dismiss. Construing the complaint and the 1990 Plan liberally, and in the light most favorable to plaintiffs, it cannot be held that "no set of facts consistent with the allegations could be proven which would entitle the plaintiffs to relief." *Fischman v. Blue Cross Blue Shield,* 755 F.Supp. 528, 530 (D.Conn.1990).

Defendants further argue that, even if plaintiffs can prove the meetings with Newell were held into 1990, this information would have become stale and thus immaterial by the time the proxy statement was issued in March 1991. Even considering only those meetings held in 1989, less than two years passed before the proxy statement was issued. Defendants have cited no case law supportive of the claim. As facts suggestive of the self-serving motivation in the directors' measures, the meetings could well have been material to shareholders voting on those measures. Thus, defendants' argument is without merit.

Defendants argue that the proxy statement sufficiently disclosed all material facts needed by the shareholders to draw their own conclusions regarding anti-takeover effects of the 1990 Plan, because "corporations are not required to address their stockholders as if they were children in kindergarten." *Richland v. Crandall,* 262 F.Supp. 538, 554 (S.D.N.Y.1967). However, whether the 1990 Plan had anti-takeover effects, and the extent thereof, was not

readily apparent from the proxy statement. Moreover, the very fact that discussions with Newell were held may have been material to a shareholder in determining whether the 1990 Plan had anti-takeover effects. Plaintiffs should, therefore, be afforded the opportunity to offer evidence on this issue.

### B. Fed.R.Civ.P. 9(b) Particularity Requirement

The first amended complaint was dismissed for failure to plead fraud with the particularity required by Rule 9(b). The second amended complaint alleges additional facts. The first and third counts are pled alternatively; plaintiffs claim that the first count is not based on fraud and is, therefore, not subject to Rule 9(b).

### (i) First Count

"Under Rule 14a–9, plaintiffs need not demonstrate that the omissions and misrepresentations resulted from knowing conduct undertaken by the director defendants with an intent to deceive. *See Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281 (2d Cir.1973). Liability can be imposed for negligently drafting a proxy statement. *Id.* at 1301 n. 20. As a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the *Gerstle* negligence standard." *Wilson v. Great American Indust., Inc.*, 855 F.2d 987, 995 (2d Cir.1988).

Under *Gerstle*, plaintiffs could prove facts consistent with their first count allegations that would entitle them to relief from Stanley. However, there are no allegations specifying which of the individual defendants drafted the proxy statement. Plaintiffs contend that such allegations are not necessary at the pleading stage. Since fraud need not be proven under this first count, Rule 9(b)'s particularity requirement does not apply. It should be noted, however, that *Gerstle* dealt only with a corporate defendant and, though it has since been applied in the context of inside directors, *see Wilson*, 855 F.2d at 995, plaintiffs here have sued outside directors as well.

Where plaintiffs have not pled that the individual defendants knew of the facts allegedly omitted from the proxy statement (and, not being alleged to have been personally involved in its issuance, therefore, had no duty to see that they were included in the statement), plaintiffs have insufficiently pled a negligence claim.

Plaintiffs have alleged that Ayers, Davis, and Brown attended meetings with Newell at which a combination was discussed. None of the remaining individual defendants are alleged to have had any knowledge of those discussions with Newell. Therefore, the first count fails to state a section 14(a) claim against the remaining defendants, namely, Banta, McNerny, Michelson, Scott, Fiedler, Uyterhoeven, Williams, Van Sinderen, Hicks, Lamb, and Chow, and is dismissed as to them. The first count's section 14(a) claims will stand as to Stanley, Ayers, Davis, and Brown.

### (ii) Third Count

The third count repeats the allegations of the first count, but explicitly alleges that defendants omitted information from the proxy statement fraudulently and with intent to deceive. Plaintiffs allege no additional facts concerning knowledge of the individual defendants about the discussions with Newell. Just as plaintiffs' allegations were insufficient to state a negligence claim against certain individual defendants, so are they insufficient to state a Section 14(a) claim for fraud against those defendants, especially in light of Rule 9(b)'s requirement that fraud be pled with particularity. The third count's Section 14(a) claims are, therefore, dismissed as to defendants Banta, McNerny, Michelson, Scott, Fiedler, Uyterhoeven, Williams, Van Sinderen, Hicks, Lamb, and Chow.

The third count allegations against Stanley, Ayers, Davis, and Brown must still undergo Rule 9(b) scrutiny. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* "To pass muster under Rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need

not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent." *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990) (citations omitted).

Plaintiffs have identified the specific allegedly fraudulent proxy statement and have alleged that Ayers, Davis, and Brown took part in the issuance of that proxy statement while aware of material facts that were omitted from it. They have also alleged the factual basis (attendance at the meetings with Newell) underlying their allegation of scienter on the part of these defendants. They have, therefore, complied with Rule 9(b). The third count's Section 14(a) claims as to Stanley, Ayers, Davis, and Brown will not be dismissed.

### C. Section 20(a), Security Exchange Act "Controlling Person" Claims

The first and third counts allege that defendants are secondarily liable as "controlling persons" under Section 20(a), which reads as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

Plaintiffs argue that, by alleging that defendants are directors of Stanley, they have pled facts bringing their action within Section 20(a). Defendants contend that directors are not necessarily "controlling persons" under Section 20(a) and that plaintiffs must allege facts indicating that each director was a culpable participant in any fraud perpetrated by the primary wrongdoer.

The first issue is whether plaintiffs have successfully pled facts showing that defendants are "controlling persons" under Section 20(a). If so, a second issue is whether plaintiffs bear the additional burden of pleading culpable participation. The two issues are distinct and will be treated separately.

#### (i) *"Controlling Person"*

■ Plaintiffs argue that, by alleging that defendants are directors, they have established "control by status" and have, therefore, stated a Section 20(a) claim. Discussions of this issue have often contrasted "control by status" with "actual control," as if the two were opposites. In fact, a defendant's status may establish that he is a "controlling person" only if that status indicates that he has actual means of controlling the primary violator. Nonetheless, the term is construed broadly to include those with "indirect means of discipline or influence short of actual direction." *Moerman v. Zipco, Inc.*, 302 F.Supp. 439, 447 (E.D.N.Y.1969), *aff'd*, 422 F.2d 871 (2d Cir.1970), *citing Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir.1967), *cert. denied* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). *See also Terra Resources I v. Burgin*, 664 F.Supp. 82, 88 (S.D.N.Y.1987) ("controlling person" to be read expansively).

■ Defendants argue that their mere status as directors is insufficient to make them "controlling persons" and that plaintiffs must "allege specifically how each director 'possessed the power to direct or cause the direction of the management'" of Stanley. *Kimmel v. Labenski*, 1988 Fed.Sec.Law Rep. ¶ 93,651, 97,991, 1988 WL 19229 (S.D.N.Y.1988), *citing McFarland v. Memorex Corp.*, 493 F.Supp. 631, 649 (N.D.Cal.1980) (applying Section 15 of the Securities Act of 1933). In light of the broad construction given to the term "controlling person," directors are found necessarily to have some "indirect means of influence" over their corporation and the managers thereof. "The conclusion is inescapable that persons who act as directors are in control of the corporation." *Moerman*, 302 F.Supp. at 447. *Accord, In re*

*Storage Technology Corp. Securities Litigation,* 630 F.Supp. 1072, 1079 (D.Colo. 1986); *American General Ins. Co. v. Equitable General Corp.,* 493 F.Supp. 721, 752 (E.D.Va.1980); *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 823–24 (E.D.Wis.1977). This construction is particularly apt given that the statute, though its reach is construed broadly, exempts from liability any person who acted in good faith or had no role in inducing the particular actions complained of, as discussed below.

### (ii) *Allocation of Burdens*

■ The second issue, properly framed, is whether participation and lack of good faith are elements of a *prima facie* Section 20(a) case or whether good faith and non-participation are statutory defenses. If they are elements of the *prima facie* case, the burden is properly on plaintiffs to show that defendants participated in the fraud without good faith. If plaintiffs need only allege facts bringing defendants within the definition of "controlling person" such that good faith and nonparticipation are defenses to a finding of control, defendants bear the burden of pleading and proof.

The earlier cases in this circuit required the plaintiff to plead and prove culpable participation. *See Gordon v. Burr,* 506 F.2d 1080, 1086 (2d Cir.1974) (Section 20(a) requires some showing of culpability before burden shifts to defendant to prove good faith); *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1301 (2d Cir.1973) (facts establishing culpability are essential to the imposition of liability).

However, in *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 716 (2d Cir.), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), an allegation of control by status was held to be sufficient to shift the burden to the defendant to prove good faith. In *Marbury,* a salesman allegedly completed fraudulent transactions through the brokerage house that employed him and which received a commission on the transactions.

These facts—essentially that the brokerage house had a *means* of controlling the salesman—were held to suffice to shift the burden to the brokerage house to prove good faith. *See Savino v. E.F. Hutton & Co.,* 507 F.Supp. 1225, 1243 (S.D.N.Y.1981).

After *Marbury,* the dominant view in this circuit has placed the burden on the alleged controlling person to plead and prove good faith or lack of participation. *See, e.g., Healey v. Chelsea Resources Ltd.,* 736 F.Supp. 488, 495 (S.D.N.Y.1990); *In re Citysource, Inc. Securities Litigation,* 694 F.Supp. 1069, 1077 (S.D.N.Y. 1988); *Terra Resources I,* 664 F.Supp. 82, 88–89 (S.D.N.Y.1987); *Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 887 (S.D.N.Y.1986); *Savino,* 507 F.Supp. at 1243.

Further, "[t]his interpretation comports with a plain reading of the statute as well as established principles of pleading." *Healey,* 736 F.Supp. at 495. "In light of this Circuit's practice of reading the 'controlling person' provisions expansively, it would seem imprudent to construct a pleading requirement that demands that plaintiffs anticipate and negate an alleged controlling defendant's good faith defense by pleading detailed facts to show the controller's culpability." *Terra Resources,* 664 F.Supp. at 88.

■ Because plaintiffs have sufficiently stated a Section 20(a) claim by alleging that defendants are directors of Stanley, defendants' motion to dismiss the Section 20(a) claims in the first and third counts is denied.[1]

### D. *Pendent Jurisdiction*

Defendants argue that the court lacks subject matter jurisdiction over plaintiffs' second count, which alleges state law claims for breach of fiduciary duty. Defendants claim that pendent jurisdiction is improper because the state claims do not arise from the same "common nucleus of operative facts" as the federal claims.

---

1. Because Section 20(a) requires only that plaintiffs plead control, not culpable participation, plaintiffs' allegations are sufficiently particular to withstand any challenge under Rule 9(b).

For pendent jurisdiction, the "state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal·and state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

 Once the power to hear the state claims is found, exercise of pendent jurisdiction over those claims is discretionary, *id.* at 726, 86 S.Ct. at 1139, largely dependent on judicial economy, convenience, and fairness to the litigants. *Id.* "A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action." *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

[10] Here, plaintiffs' state claims arise, in part, from the same factual allegations that support their federal claims: the alleged scheme among the Stanley directors to ward off a combination with Newell and entrench themselves. Evidence on both claims will necessarily overlap. Interests of judicial economy, convenience, and fairness to the litigants would be served by resolving all of plaintiffs' claims in one action. Further, the state claims arise in an area—securities law—which is strongly interrelated to questions of federal policy. The argument for exercise of pendent jurisdiction is particularly strong where state law claims and questions of federal policy are closely tied. *Miller v. Lovett,* 879 F.2d 1066, 1072 (2d Cir.1989). There is no demonstrated prejudice if both claims are tried together. The interests in this case thus weigh in favor of the exercise of pendent jurisdiction.

E. Fed.R.Civ.P. 23.1

Defendants argue that plaintiffs' second count claim is derivative and must be dismissed because plaintiffs have not complied with the pleading requirements of Rule 23.1, which reads in relevant part:

> The complaint [in a shareholder derivative action] shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff ·desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

The complaint did not contain any such allegations.

Rule 23.1, by its own terms, applies only to derivative actions. As the Connecticut Supreme Court has stated:

> A distinction must be made between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured. ... Generally, individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation—to the shareholders collectively. ... In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding "secondarily," deriving his rights from the corporation which is alleged to have been wronged.

*Yanow v. Teal Indust., Inc.,* 178 Conn. 262, 281, 422 A.2d 311 (1979) (citations omitted).

 The second count alleges that defendants breached their fiduciary duties "at the expense and detriment of the Company's public shareholders" and that, as a result, plaintiffs "have not and will not receive their fair proportion of the value of Stanley's assets and/or have been and will be prevented from obtaining a fair and adequate price for their shares of Stanley common stock." Second Amended Complaint, ¶¶ 54, 56, 57, 58. They seek an order "preventing defendants from inequitably and unlawfully depriving plaintiffs and the Class of their right to realize a full

and fair value for their stock at a substantial premium over the market price, and to compel defendants to carry out their fiduciary duties to maximize stockholder value." Second Amended Complaint, ¶ 59.

Clearly, the second count claims injury to the corporation and, therefore, to the shareholders collectively rather than individually. This claim can only be maintained derivatively. *Yanow,* 178 Conn. at 281, 422 A.2d 311; *see also Moelis v. Schwab Safe Co.,* 706 F.Supp. 284, 285–86 (S.D.N.Y.1989). Plaintiffs' argument that the third count is also a claim for dilution of individual plaintiffs' voting rights is simply not borne out by the allegations.

■■■ Rule 23.1 is procedural and cannot create or alter substantive rights. *Kamen v. Kemper Fin. Serv., Inc.,* — U.S. —, —, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991). The Rule, therefore, does not determine whether the applicable law requires that demand be made; federal courts must look to state law to make this determination. *Id.* — U.S. —, 111 S.Ct. at 1722–23. Nor does the Rule even purport to require that demand be made; it requires only that plaintiffs allege with particularity the demands they have made, "if any," or their reasons for not making demand. Regardless of the governing substantive law, the procedural pleading requirements of the Rule must be fulfilled.

■■■ In *Kamen,* the plaintiff, attempting to comply with Rule 23.1, pled demand futility. The court of appeals upheld the district court's dismissal, ruling that the futility exception to the demand requirement should be abolished as a matter of federal common law. *Id.* — U.S. at —, 111 S.Ct. at 1715. The Supreme Court reversed, holding that the viability of the futility exception should be determined under state law, on a state-by-state basis. *Id.* — U.S. at —, 111 S.Ct. at 1722–23. Nothing in *Kamen* altered or invalidated the procedural pleading requirements of Rule 23.1. In fact, the Court explicitly left open the possibility that the plaintiff's action should be dismissed for failure to allege demand futility with sufficient particu-

larity as required by Rule 23.1. *Id.* — U.S. at —, 111 S.Ct. at 1723, n. 10.

Plaintiffs here have made no attempt to comply with Rule 23.1. The second count is, therefore, dismissed. However, from the nature of the conduct complained of, plaintiffs are given thirty (30) days from the date hereof to plead demand futility.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss (document # 42) is granted in part and denied in part. The Section 14(a) claims in the first and third counts are dismissed as to defendants Banta, McNerny, Michelson, Scott, Fiedler, Uyterhoeven, Williams, Van Sinderen, Hicks, Lamb, and Chow. The Section 20(a) claims in the first and third counts, however, are not dismissed. The second count is dismissed in its entirety, with leave to amend within thirty (30) days hereof.

SO ORDERED.