Loyal W. and Bobbie
**FURRY, Plaintiffs,**

v.

**FIRST NATIONAL MONETARY
CORPORATION, et al.,
Defendants.**

**No. 84–CV–4993–DT.**

United States District Court,
E.D. Michigan, S.D.

Aug. 18, 1986.

Stephen Halfill, Alexandria, Va., for plaintiffs.

Kenneth Silver and Matthew Schlegel, Southfield, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This is a case alleging fraud in connection with the sale of precious metals. By way of their complaint, plaintiffs allege violations of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The case is presently before the Court on plaintiffs' and defendants' cross motions for summary judgment.

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

■ Initially, the Court finds that defendants are entitled to a dismissal of plaintiffs' civil racketeering charge. To state a civil cause of action under RICO,[1] the plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of "racketeering activity" which has caused injury to the plaintiffs. *Sedima, S.P.R.L. v. Imbex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiffs herein have failed to meet the third of these requirements in their complaint.

Plaintiffs' complaint fails to indicate a *pattern* of racketeering activity. A pattern requires at least two acts of racketeering activity, one of which occurred within ten years after the commission of a prior act of racketeering activity, 18 U.S.C. § 1961(5). In *Sedima*, the Supreme Court invited courts to develop rigorous standards for what constitutes a pattern of racketeering activity:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pat-

---

1. RICO provides:

   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partic-ipate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

   18 U.S.C. § 1962(c).

tern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.,* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).

*Sedima,* 105 S.Ct. at 3285 n. 14.

Many lower courts have accepted the Supreme Court's invitation, and have held that where the predicate acts all occurred in the course of a single scheme to defraud the victim, a pattern of racketeering activity had not been established. *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985); *Professional Assets Manage. v. Penn Square Bank,* 616 F.Supp. 1418 (D.Okla.1985); *Allington v. Carpenter,* 619 F.Supp. 474 (D.Cal.1985); *Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198 (S.D.N.Y. 1986); *Superior Oil Co. v. Fulmer,* 785 F.2d 252, (8th Cir.1986).

The requirement that the predicate acts must have occurred in different criminal episodes is consistent with Congress' intent to exclude isolated criminal conduct from RICO liability. *See Sedima,* 105 S.Ct. at 3285 n. 14. While it is true that Congress intended RICO to reach both legitimate and illegitimate enterprises, *Id.,* RICO ought not be used as a basis for federal question jurisdiction in every "garden variety" fraud case. As one court has noted, "[m]ost substantial business transactions involved two or more uses of the mail during negotiations. To hold that two such [acts] are sufficient to constitute a 'pattern of racketeering activity' would be to sweep into federal courts, under RICO, the great majority of actions for fraud in commercial transactions." *Medallion T.V. Enterprises, Inc. v. Select V, Inc.,* 627 F.Supp. 1290 (D.C.Cal.1986). This interpretation is also consistent with the plain meaning of the word "pattern."

> True enough, "pattern" connotes similarity, hence the cases' proper emphasis on relatedness of the constitutent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Inryco,* 615 F.Supp. at 831.

In the present case, plaintiffs complain of essentially one wrongdoing; namely, that they were sold unregulated commodities that were otherwise required to be regulated. These allegations, then, constitute no more than a single fraudulent act. Since this situation, therefore, does not involve allegations of a continuous pattern of racketeering relationships, *Sedima, supra* at n. 14, plaintiffs' claim of civil racketeering fails and defendants' motion for summary judgment must be granted.

■ Having dismissed plaintiffs' allegations of civil racketeering, the Court further finds that the primary jurisdiction doctrine mandates that the parties hereto be

compelled to exhaust their available administrative reparations procedures for resolution of the remaining alleged Commodities Exchange Act violations. The Commodity Exchange Act provides an administrative procedure whereby any person who complains that another person has violated the Act or any rule, regulation, or order promulgated thereunder may apply for a reparation award by petition. 7 U.S.C. § 18 *et seq.* In addition, the primary jurisdiction doctrine allows this Court to require utilization of available administrative remedies even where, as here, the exhaustion of the same is *not* a jurisdictional prerequisite to suit. *See Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed. 2d 525 (1973); *Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973). This doctrine is appropriately invoked where the resolution of a dispute requires the special expertise or knowledge of a particular agency. *Curran v. Merrill Lynch Pierce Fenner & Smith,* 622 F.2d 216 (6th Cir.1980), *aff'd* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). This case is such that the issues raised are more appropriately decided in the first instance by the Commodity Exchange Commission.

The sole issue here is the appropriate characterization of the cash forward agreement for precious metals marketed by defendants. Plaintiffs contend that defendants' cash forward account is a futures contract which, under the Commodity Exchange Act, must be traded on a designated market to be legal. In contrast, defendants contend that the cash forward agreement is a leverage contract which is not required to be traded on designated contract markets.[2] 7 U.S.C. § 23.

The Act itself, however, provides no guidance as to the distinguishing features of leverage and futures contracts. Congress, in defining a leverage contract, as distinguished from a futures contract, merely relied on trade usage. 7 U.S.C. § 23(a). Moreover, Congress has expressly given the Commodity Futures Trade Commission the option of creating comprehensive regulations for the classification of futures contracts *vis a vis* leverage transactions. 7 U.S.C. § 23(d). To this end, the Commission has enacted a comprehensive set of regulations governing leverage transactions.[3]

Recently, the Commission had occasion to consider the precise issues raised in this case. In the case of *In re First National Monetary Corp.,* Com.Fut.L.Rep. (CCH) ¶ 22, 698 (CFTC 1985), the Commission addressed issues identical to those herein concerning identical cash forward instruments. (Defendants' Brief in Support of Motion for Summary Judgment, p. 12). During the pendency of the appeal to the Commission in that case, the current leverage regulations were enacted. The Commission held that although the instruments were clearly unregistered futures under the new regulations, such regulations were only to be applied "prospectively." Thus, since the regulations were not a part of the administrative record, the Commission held it unfair to consider them and ruled that the subject instruments had successfully established the leverage defense based upon the record.

In so ruling, however, the Commission obscured its intent governing the enforcement of the current leverage regulations. On the one hand, the Commission's decision may be read as limited to the peculiar facts of that case. If that be so, applying the leverage regulations prospectively would require their application to any suit filed subsequent to the rules' enactment (Feb. 13, 1984), including the instant case (filed Oct. 30, 1984). Alternatively, the Commission's decision may fairly be read, as urged by defendants herein, to apply the leverage regulations only to those commodities instruments offered subsequent (i.e. prospectively) to the regulations' promulgation. The Court believes either reading of the Commission's intent to be entirely plausible.

---

**2.** An excellent expose on the distinguishing features of cash forward and futures contracts was provided by Judge Posner of the Seventh Circuit in *United States v. Dial,* 757 F.2d 163 (7th Cir. 1985).

**3.** 17 C.F.R. § 31 (1985).

As a result, the Court is left with more than a mere adjudicatory or "definitional" task. Rather, the issue of enforcement against unregistered futures contracts involves critical *policy* judgments which the Commission alone is qualified to make.[4] Accordingly, in order to obtain a clear expression of Commission policy and to otherwise enable the Court to administer a more sure-footed adjudication of this complex issue, plaintiffs must be compelled to resort to administrative reparations proceedings before this Court entertains the issues herein.

■ Therefore, since there exists substantial legal basis for the classification of the cash forward agreement as either a leverage or futures contract, plaintiffs' and defendants' motions for summary judgment on this issue are hereby DENIED. Additionally, the Court orders that this matter be DISMISSED without prejudice under the discretionary authority provided by *Ricci, Deaktor* and *Curran, supra,* to allow plaintiffs to resort to administrative reparations procedures.

IT IS SO ORDERED.

---

**4.** On this point, the Court notes that the case at bar is not the garden variety fraud case as was present in *Curran, supra.* The requirement of exhaustion here is intended to "ensure that private suits will not interfere with the orderly development of precedent or exercise of discretion by [the Commission] ... [and] to avoid interfering with the CFTC's administration of the regulatory scheme." *Curran,* 622 F.2d at 235.