**John W. LOGAN**

v.

**Thomas E. LEDFORD, et al.**

No. 3–87–0685.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 4, 1988.

Michael A. Meyer, David N. Burn, Burn & Meyer, Nashville, Tenn., for plaintiff.

George R. Fusner, Jr., White & Reasor, Richard D. Speight, Speight & Parker, Richard K. Smith, Nashville, Tenn., for Security Federal Sav. & Loan Ass'n.

C. Kinian Cosner, Jr., Manier, Herod, Hollabaugh & Smith, Nashville, Tenn., for Robert G. Lakins.

William R. Willis, Jr., Alan D. Johnson, Willis & Knight, Nashville, Tenn., for Paul F. Durham.

William R. O'Bryan, Jr., James H. Porter, Trabue, Sturdivant & Dewitt, Nashville, Tenn., for Michael D. Pierce.

Robert M. Garfinkle, Edwin M. Walker, McMackin, Garfinkle & McLemore, Nashville, Tenn., for Commerce Union Bank.

## MEMORANDUM

WISEMAN, Chief Judge.

Plaintiff John Logan commenced this action on September 1, 1987, against Thomas Ledford, Robert Lakins, Paul Durham, Michael Pierce, Security Federal Savings & Loan Association ("Security Federal"), and Commerce Union Bank ("Sovran Bank"). Plaintiff alleges violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and vio-

lations of the Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 to –5002. On December 1, 1987, plaintiff amended his complaint to add a common law fraud claim.

Plaintiff and all defendants have filed motions for summary judgment or partial summary judgment pursuant to Federal Rule of Civil Procedure 56. These motions taken together present three main issues: whether the joint venture interest plaintiff acquired is a security; whether plaintiff timely filed his federal securities claims; and whether plaintiff states a claim under RICO. This Court need not decide whether plaintiff's joint venture interest is a security. This Court holds that the applicable statute of limitations bars plaintiff's federal securities claims and that plaintiff fails to allege a pattern of racketeering activity sufficient for RICO liability.

## I. *Plaintiff's Factual Allegations*

Security Federal issued to Paul Durham a commitment letter in August, 1984, to finance the purchase of Timber Lake Condominiums in Hermitage, Tennessee. Robert Lakins, Thomas Ledford, Michael Pierce and Durham formed Timber Lake Associates ("TLA"), a Tennessee general partnership, in April, 1985. TLA acquired the Timber Lake property, rights to the construction contract for Timber Lake Condominiums, and the Security Federal loan commitment. TLA financed this acquisition through a loan of $284,000 from Metropolitan Federal Bank and a loan to Pierce of $102,000 from Security Federal. TLA eventually borrowed $2,500,000 under the Security Federal loan commitment. This money financed the purchase of fifty-one Timber Lake condominium units.

In September, 1985, Ledford, Lakins, Pierce, and Durham organized Timber Lake Joint Venture ("TLJV") to acquire the condominiums from TLA and sell the units for profit. TLA retained certain management rights and was to receive fees and a share of the profits in exchange for its services. Investors in TLJV received an interest in the initial capital, profits, and losses of the venture. Sovran Bank agreed to make loans to qualified individuals for purchasing an interest in TLJV.

Ledford and Lakins met with plaintiff Logan in September, 1985, to discuss whether plaintiff would like to invest in TLJV. They also gave plaintiff a memorandum describing the venture. Plaintiff signed the Joint Venture Agreement on October 11, 1985, and acquired a one half unit of the venture at a price of $70,000. Nine others eventually invested in the joint venture.

The August, 1984, loan commitment from Security Federal was due to expire on September 1, 1985. Negotiations for a new commitment began during July and August, 1985. This new commitment was made on October 21, 1985, the day before the TLJV offering closed. Security Federal modified this loan commitment twice after the closing. It finally withdrew all commitments by September, 1986. Today TLJV is a financial failure, unable to sell enough condominium units to service its debts.

Plaintiff specifically alleges as the basis for his claims against the individual defendants that they:

(a) misrepresented to him that the venture had already sold a sufficient number of condominium units to outside buyers to meet the venture's sales projections when in fact no units had been sold;

(b) failed to disclose that one or more of the defendant promoters were experiencing financial difficulty and had defaulted on loans incurred in connection with TLA;

(c) failed to disclose that some proceeds from the sale of interests in the venture would be used to pay accounting fees incurred in connection with other ventures;

(d) failed to disclose that the terms of financing arrangements with Security Federal were modified before the close of the offering on October 22, 1985.

Plaintiff alleges that defendants Security Federal and Sovran Bank engaged in con-

duct that constituted direct violations of federal and state law or aided and abetted such violations. Plaintiff specifically alleges as the basis for his claims against the institutional defendants that they:

(a) knowingly lent their good names to the venture by providing financing to the promoters or to investors with full knowledge that the financial condition of the project was questionable and not fully disclosed in the memorandum describing the venture;

(b) failed to disclose that they had made previous loans to the promoters of the venture and that the promoters had defaulted or were about to default on these loans;

(c) failed to disclose that offering interests in the venture would shift the banks' risks to the investors;

(d) failed to disclose that the terms of the loan commitment to the project had been modified prior to the close of the offering.

## II. *The Applicable Statute of Limitations Bars Plaintiff's § 10(b)/Rule 10b–5 Claims*

No federal statute of limitations governs a private cause of action under § 10(b) of the Securities Exchange Act of 1934 and rule 10b–5. *Carothers v. Rice*, 633 F.2d 7, 8 (6th Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1702, 68 L.Ed.2d 199 (1981). This Court therefore must borrow the forum state's statute of limitations that best effectuates the purposes of the federal securities laws. *See id.* at 8–9 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976)). This is the statute of limitations applicable to the Tennessee cause of action most resembling a § 10(b)/rule 10b–5 claim. *See id.* at 10.

■ Plaintiff asks this Court to apply the three year statute of limitations applicable to Tennessee common law fraud and deceit claims. *See* Tenn.Code Ann. § 29–3–105. Plaintiff relies in part on *Media Gen., Inc. v. Tanner*, 625 F.Supp. 237 (W.D.Tenn.1985). *Media General* held that the Tennessee common law action of

deceit is the Tennessee action most analogous to § 10(b)/rule 10b–5 claims. *Id.* at 246–47. But this Court finds persuasive recent decisions holding that the Tennessee Blue Sky law, Tenn.Code Ann. § 48–2–121, is the most analogous Tennessee cause of action. *E.g., Ockerman v. May Zima & Co.*, 694 F.Supp. 414 (M.D.Tenn.1988); *Montcastle v. American Health Sys.*, No. CIV–3–86–903, —— F.Supp. —— (E.D.Tenn. Apr. 19, 1988). This Court therefore holds that Tenn.Code Ann. § 48–2–122(h), the statute of limitations applicable to Tennessee's Blue Sky law, also governs plaintiff's § 10(b)/rule 10b–5 claims.

■ This holding does not resolve completely the parties' dispute over the proper limitations period. Section 48–2–122(h) provides:

No action shall be maintained under this section unless commenced before the expiration of two (2) years after the act or transaction constituting the violation or the expiration of one (1) year after the discovery of facts constituting the violations, or after such discovery should have been made by the exercise of reasonable diligence, whichever first expires.

Plaintiff argues that when federal courts borrow state limitations statutes they adopt only the chronological period and ignore the substantive aspects of state law. Plaintiff argues that the one-year-from-notice provision of § 48–2–122(h) is a substantive aspect of that statute that this Court must ignore. The statute then offers two chronological periods, one year and two years. Plaintiff asserts this Court must apply only the longer of these two periods because federal policy favors longer over shorter periods.

Plaintiff misconstrues federal policy. Federal courts do ignore the substantive aspects of a borrowed state statute of limitations in the sense that federal law provides the tolling rule. *Silverberg v. Thomson McKinnon Sec., Inc.*, 787 F.2d 1079, 1082 (6th Cir.1986); *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 691 (10th Cir.1981), *cert. denied*, 454 U.S. 895,

102 S.Ct. 392, 70 L.Ed.2d 209 (1982). Applying the federal tolling rule does not mean this Court must ignore the one-year provision of § 48-2-122(h), however.

Federal policy is to give a claimant at least as long to file suit under federal law as under the most analogous state cause of action. *Herm v. Stafford*, 663 F.2d 669, 678 (6th Cir.1981) (quoting *Carothers v. Rice*, 633 F.2d at 14). But federal policy is not simply to adopt the largest number mentioned in the state limitations statute. Plaintiff attempts to isolate two separate limitations periods in § 48-2-122(h). This cannot be done. The two-year provision of that statute is not a second, longer period but is an outside limit that does not extend the time in which a claim can be asserted. This Court will not adopt arbitrarily the two-year provision only. *See Haney v. Dean Witter Reynolds, Inc.*, No. CIV-1-85-531 (E.D.Tenn. Aug. 20, 1986) [available on WESTLAW, 1986 WL 21340] (assuming both one-year and two-year provisions of Tenn.Code Ann. § 48-2-122(h) apply to § 10(b)/rule 10b-5 claim).

■ Under federal law a statute of limitations begins to run when the plaintiff has "actual knowledge of the fraud or notice of facts which would lead to actual knowledge in the exercise of due diligence." *Kennedy v. Tallant*, 710 F.2d 711, 716 (11th Cir. 1983). This Court may determine the commencement date for a statute of limitations when ruling on a motion for summary judgment in a securities case. *Herm v. Stafford*, 663 F.2d at 682. The facts upon which this Court may rely "must be sufficient to enable a court to conclude as a matter of law that a reasonably diligent person should have discovered the participation of the particular defendant by the date the fraud should have been discovered." *Id.*

Plaintiff filed this action on September 1, 1987. But plaintiff's deposition shows that by April, 1986, plaintiff knew about many of the alleged facts underlying his securities claims against defendants. Plaintiff states in his deposition that he knew by February, 1986, that certain condominium units had not been sold as he alleges he was led to believe. *See Logan Deposition,* Vol. II, 67, lines 6-19; 141, lines 1-6; 186, lines 8-22. Plaintiff also indicates that he knew of Durham's alleged financial difficulties and missed capital calls before plaintiff purchased his interest in October, 1985. *See id.* at 70, lines 9-25; 71, lines 1-20; 122, lines 22-25; 123, lines 1-16. Plaintiff knew by April, 1986, about the alleged improper use of joint venture proceeds to pay accounting fees incurred during other ventures. *See id.* at 32, lines 16-25; 79, lines 19-21; 80, lines 15-20.

Plaintiff also admits he learned in February, 1986, that Security Federal had modified the terms of its commitment letter. *See id.* at 165, lines 15-18; 195, lines 3-8. Plaintiff asserts that he did not know until sometime in 1987 that this modification occurred prior to the October 22, 1985, closing. *See id.* at 194, lines 14-24. The date "October 21, 1985" appears at the top left-hand corner of the new commitment letter. Plaintiff states that he "believe[s]" a copy of this letter was produced at a February, 1986, meeting with plaintiff present. *See id.* at 164, lines 17-18. An investor has a positive duty to use diligence in discovering the existence of a cause of action. *Herm v. Stafford*, 663 F.2d at 682. Exercising due diligence would have revealed to plaintiff in early 1986 that the modification in financing arrangements took place before the TLJV closing.

Plaintiff was or should have been aware by April, 1986, of facts sufficient to put him on notice of the securities violations he alleges. Plaintiff failed to file this action within one year of this date. The applicable statute of limitations bars plaintiff's § 10(b) and rule 10b-5 claims against all defendants.

III. *Defendants Have Not Engaged In A "Pattern Of Racketeering Activity" Under RICO*

Plaintiff alleges defendants violated 18 U.S.C. § 1962(c) and (d). Section 1962(c) prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity. Section 1962(d) prohibits conspiracy to violate 18 U.S.C. § 1962(a)-(c). This Court finds that plaintiff cannot establish the requisite "pattern

of racketeering activity" because defendants' alleged predicate acts were part of a single finite scheme.

RICO was designed "to seek the eradication of organized crime in the United States ... by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub.L. 91–452, § 1, 84 Stat. 922, 923 (1970). But RICO's broad wording and arsenal of treble damages and attorneys fees tempt plaintiffs to employ RICO in situations never envisioned by Congress. See Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 500, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985) ("[I]n its private civil version, RICO is evolving into something quite different from the original conception of its enactors."). See also Furry v. First Nat'l Monetary Corp., 686 F.Supp. 156, 158 (E.D.Mich.1986) (noting RICO's potential for unintended expansion of federal jurisdiction to "garden variety" fraud cases). Congress ultimately must determine if and how to amend RICO. The judiciary, however, must give proper content to RICO's language.

The Supreme Court recently hinted that courts "develop a meaningful concept of 'pattern' " as a way to define RICO's scope while remaining true to RICO's language. Sedima, 473 U.S. at 500, 105 S.Ct. at 3287. A pattern of racketeering "requires at least two acts of racketeering activity...." 18 U.S.C. § 1961(5). Acts of racketeering activity ("predicate acts") are defined in 18 U.S.C. § 1961(1) and include mail fraud and securities fraud. The Court in Sedima suggested that two such acts are necessary but may not be sufficient to establish a pattern. See id. at 496 n. 14, 105 S.Ct. at 3285 n. 14. A pattern requires "continuity plus relationship" between predicate acts. See id. (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)).

The Sixth Circuit Court of Appeals has yet to define "pattern of racketeering activity." But numerous other courts have ruled on the issue since Sedima. Most of these courts hold that sufficient continuity exists only when the predicate acts alleged occurred in separate criminal transactions, episodes, efforts, incidents, or schemes. See, e.g., Torwest DBS, Inc. v. Dick, 810 F.2d 925 (10th Cir.1987) (incidents); Holmberg v. Morrisette, 800 F.2d 205 (8th Cir. 1986), cert. denied, 481 U.S. 1028, 107 S.Ct. 1953, 95 L.Ed.2d 526 (1987) (schemes or efforts); Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986) (transactions separated in time and space); MHC, Inc. v. Int'l Union, United Mine Workers of Am., 685 F.Supp. 1370 (E.D.Ky.1988) (multiple episodes evincing a regular, ongoing course of conduct); McMullen v. Christenson, 678 F.Supp. 1277 (E.D.Mich.1987) (transactions, episodes or events); Cincinnati Gas & Elec. Co. v. General Elec. Co., 656 F.Supp. 49 (S.D.Ohio 1986) (transactions); Terra Resources I v. Burgin, 664 F.Supp. 82 (S.D.N.Y.1987) (schemes). But see Bank of Am. v. Touche Ross & Co., 782 F.2d 966, 971 (11th Cir.1986) ("Acts that are part of the same scheme or transaction can qualify as distinct predicate acts."). "Surely the continuity inherent in the term ["pattern"] presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.' " Northern Trust Bank/O'Hare v. Inryco, Inc., 615 F.Supp. 828, 831 (N.D.Ill. 1985).

These cases demonstrate a trend but do not establish a single test. See generally, MHC, Inc. v. Int'l Union, United Mine Workers of Am., 685 F.Supp. at 1383–85 (distinguishing "[t]hree distinct standards" used for determining whether the continuity aspect of a pattern is established). The rule requiring predicate acts to occur in separate schemes is more strict than that requiring only separate transactions, for example. Plaintiff urges this Court to apply the more liberal separate transactions test of Morgan v. Bank of Waukegan, 804 F.2d 970 (7th Cir.1986). TLJV ultimately had ten investors. Plaintiff argues in effect that each sale of a joint venture interest was a separate criminal transaction.

The separate transactions test as plaintiff applies it to the facts of this case is too broad to give sufficient content to the continuity requirement. The separate transac-

tions test also is unnecessarily broad for the purpose for which it was established. *Morgan* rejected the separate schemes test because the court feared that it allows defendants to evade RICO liability by engaging in a single "large and ongoing scheme." *Id.* at 975. The separate schemes test and *Morgan's* fear of the ongoing scheme can be accommodated in a single rule, however. This Court holds that continuity exists when predicate acts are committed to further either two or more schemes or one open-ended continuous scheme. *Accord MHC, Inc. v. Int'l Union, United Mine Workers of Am.,* 685 F.Supp. at 1384–85; *Temporaries, Inc. v. Maryland Nat'l Bank,* 638 F.Supp. 118, 123 (D.Md.1986). *Cf. Terra Resources I v. Burgin,* 664 F.Supp. at 86 ("the necessary continuity between predicate acts can be . . . supplied by the relationship of the acts to a criminal enterprise that will continue indefinitely.").

Plaintiff does not satisfy this test. Plaintiff claims that defendants committed two or more acts of mail fraud and/or of securities fraud. But defendants committed these alleged predicate acts to further a single, isolated, finite "scheme" to sell interests in a joint venture. A pattern does not exist merely because ten investors ultimately purchased venture interests. *See International Data Bank v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987) (single, limited scheme to defraud through misleading prospectus not a pattern of racketeering activity just because it attracted ten investors). *See also Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1467 (S.D. N.Y.1986) (sixteen purchasers of limited partnership interests in operation of apartment complex failed to establish pattern of racketeering activity by alleging that false and misleading investment memorandum had induced their investments). Plaintiff does not allege facts indicating a threat of ongoing criminal behavior. This case therefore does not involve a pattern of racketeering activity.

This Court dismisses plaintiff's claims under 18 U.S.C. § 1962(c). This Court also dismisses plaintiff's conspiracy claims under 18 U.S.C. § 1962(d). Plaintiff cannot establish a conspiracy to violate § 1962(c)

absent a pattern of racketeering activity. *United States v. Neapolitan,* 791 F.2d 489, 492 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986); *McMullen v. Christenson,* 678 F.Supp. at 1280.

### IV. *Conclusion*

The applicable statute of limitations bars plaintiff's claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder. Plaintiff does not allege a pattern of racketeering activity sufficient to establish a claim under 18 U.S.C. § 1962(c) or (d). This Court dismisses plaintiff's federal securities and RICO claims and therefore must dismiss plaintiff's pendent state claims without prejudice to their merits. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).